## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Garry L. Tobias (2013-0104228 ), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 5913 |
| | ) | |
| Tom Dart, et al. | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Garry Tobias ("Tobias"), a pretrial detainee confined at the Cook County Jail, filed this 42 U.S.C. § 1983 action against Defendants Cook County Sheriff Tom Dart and Jail Superintendent Robert Lyles. Tobias alleges that after entering the jail he waited two months to receive his prescription eye drops for Glaucoma. He contends that he submitted requests for eye drops and to see an eye doctor to Superintendent Lyles, the officer in charge of Division 5 where Tobias was housed, but his requests were ignored. Tobias further alleges that there was a custom or policy of not timely providing pretrial detainees with their prescribed medications. Currently before the Court is Defendants' motion for summary judgment, to which Tobias has responded. For the reasons stated below, the Court grants Defendants' motion and dismisses this case.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes all facts and makes all reasonable inferences in favor of the non-moving party. *Jajeh*, 678 F.3d at 566.

If the moving party demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the nonmoving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010).

When addressing a summary judgment motion, this Court derives the background facts from the parties' factual statements submitted pursuant to Local Rule 56.1 (N.D. Ill.), which assist the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). The movant's Rule 56.1 Statement must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." Rule 56.1(a)(3). The non-movant must respond "to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Rule 56.1(b)(3)(B). The non-movant may submit "any affidavits or other materials" to support his responses to the movant's statements of fact, as well as any additional facts requiring denial of summary judgment. Rule 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c). A non-movant's failure to respond to a Local Rule 56.1 factual statement results in that fact being considered admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir.

2006); *see also* Rule 56.1(b)(3)(C) (" All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party").

In the present case, because Tobias is proceeding *pro se*, the Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2 (N.D. Ill.). The notice explains the consequences of failing to properly respond to a motion for summary judgment and to the facts set out in Defendants' Rule 56.1 Statement. (R. 43-1.) In response to the summary judgment motion, Tobias submitted a letter that included his own affidavit and copies of medical request slips but did not respond to the Defendants' Rule 56.1 Statement. (R. 50.) Because it was unclear whether Tobias intended his letter to be his response to the summary judgment motion, the Court asked him to clarify whether he was going to file an additional response. (R. 51.) Tobias informed the Court that his letter and attachments should be considered his response. (R. 52.) After briefing was complete, Tobias submitted a "Motion for Filing." (R. 55.) While this motion more fully responds to Defendants' memorandum supporting their summary judgment motion, and the Court has considered it when addressing the summary judgment motion, the Motion for Filing, like Tobias' prior letter, does not address the facts in Defendants' Rule 56.1 Statement.

This Court liberally construes pleadings from *pro se* litigants, like Tobias in this case; however, such litigants must still comply with the Court's local procedural rules. *Dale v. Poston* 548 F.3d 563, 568 (7th Cir. 2008); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). Accordingly, this Court will consider the facts in Defendants' Rule 56.1 Statement to be admitted. *Raymond*, 442 F.3d at 608. The Court notes, however, that considering Tobias' filings and Defendants' Rule 56.1 factual statements, the parties do

not appear to disagree as to which facts are disputed. With these standards in mind, the Court turns to the facts of this case, noting the facts that are disputed.

## FACTS

Tobias entered the Cook County Jail on May 16, 2011 and was asked a series of medical questions from a form as part of routine intake screening procedures. (R. 45, Defs. SOF ¶¶ 9-10.) The intake screening form responses correctly showed that Tobias had high blood pressure, that he reported feeling nausea during the questioning, and that he did not suffer from various medical conditions such as diabetes, epilepsy, asthma, emphysema, heart problems, liver or kidney disease, sickle-cell anemia, etc. (*Id.* ¶ 11.) The only answer which Tobias contends was incorrect was the intake screening form's response to the question of whether he had Glaucoma. The form indicated a negative response, but Tobias contends that he told the examiner "yes." (*Id.* ¶ 12; *see also* Exh. C, Intake Screening Form at 4.) The form also showed, though not addressed by the parties, that Tobias answered "no" when asked if he used eyeglasses. (R. 45-3, Exh. C at 4.) After answering questions about his medical history, Tobias was referred for a medical examination by a physician. Tobias told the physician that he had been using heroin for the previous 10 years. (R. 45-2, Exh. B, Pl. Depo. at 73-74.) Tobias and the physician also discussed whether he was taking medication for high blood pressure. (*Id.* at 75-76.) Tobias did not discuss Glaucoma with the physician because she did not ask about it, even though he was concerned about getting his Glaucoma medication. (*Id.* at 76-77.) At the conclusion of the intake exam, Tobias was diagnosed with opioid withdrawal, for which he was given medication, and with hypertension, which was to be controlled "off medication." (Defs. SOF ¶ 13.)

Tobias was referred to Primary Care for an examination on May 31, 2011, and was shown how to request medical attention through Health Service Request forms. (*Id.*) According to Tobias, he told the primary care physician, Dr. Kahn, that he had Glaucoma, to which Dr. Kahn responded that the jail must have been backed up with providing him with medication or an examination. (Pl. Depo. at 84.) Tobias was not sure if Dr. Kahn had the authority to prescribe anything for Glaucoma because he was not an ophthalmologist. (*Id.*)

On June 14, 2011, Tobias submitted a health request form seeking to see an eye doctor for eye drops and reading glasses. The request form stated that he had been experiencing headaches and was unable to read mail and books. The request form did not mention Glaucoma or indicate that Tobias had been diagnosed with the condition. (Defs. SOF ¶ 14, *see also* Exh. E, copy of 6/14/11 Detainee Health Service Request Form.)

Three days later, on June 17, 2011, Tobias filed a grievance stating that he needed reading glasses and eye drops for Glaucoma. (Defs. SOF ¶ 15, *see also* Exh. F, 6/17/11 grievance.) The summary judgment evidence indicates that the June 17, 2011 grievance is the first time Tobias stated in a written request for medical attention that he had Glaucoma.

According to Tobias, he submitted two written detainee request forms to Superintendent Lyles in June 2011 about his Glaucoma. Copies of the detainee request forms are not in the record, and Tobias provided no dates as to when he submitted the requests. (Defs. SOF ¶ 18; *see also* Exh. B, Pl. Depo. at 123-27.)

In response to the June 14, 2011 medical request slip, Tobias was scheduled for an appointment with a general physician on June 28, 2011, and an ophthalmologist on September 6, 2011. (Defs. SOF ¶ 17; *see also* Exh. E.) Tobias saw a physician on June

28, 2011, either Dr. Khan or Dr. Fowler. (Pl.'s Dep. at 94.) Tobias indicates that he was seen for his hypertension and heroin withdrawal. (*Id.* at 94-95.) Tobias was not treated for Glaucoma at that time. According to Tobias, he asked the receptionist whether her department had received his medical request slips for his Glaucoma, but he did not talk to any other medical staff person that day about the condition. (*Id.* at 95.)

On June 30, 2011, Tobias submitted another health service request form stating he needed eye drops for his Glaucoma. (Defs. SOF ¶ 16, *see also* Exh. G.) The form was "referred" on July 1, 2011 (possibly to patient scheduling), and was reviewed on July 12, 2011. (*Id.*) The Provider Notes state that Tobias had not received medication for Glaucoma since incarceration and that he had an ophthalmology exam scheduled for September 6, 2011. (*Id.*)

On July 10, 2011, Tobias filed another health request form and a grievance seeking drops for Glaucoma. (Defs. SOF ¶ 19, *see also* Exh. I.)

At some point in July of 2011, Tobias spoke about his medical needs to Sergeant Moore, a Division 5 officer subordinate to Superintendent Lyles. Moore told Tobias that he did not need to fill out another form and that Moore would make sure Tobias saw a doctor. Tobias credits Moore with getting him an earlier eye exam. (Defs. SOF ¶¶ 20-22.)

Tobias saw an optometrist, Dr. Weinstein, on July 20, 2011, who prescribed eye drops for Glaucoma. (*Id.* ¶ 23; *see also* Exh. L, Aff. of Dr. Dimitrios Patriamakos, at ¶ 6.) Tobias later saw an ophthalmologist, Dr. Patriamakos, on August 4, 2011, who also checked Tobias' eye pressure and vision and who instructed him to continue using eye drops. (Defs. SOF ¶ 24.) Tobias continued seeing Dr. Patriamakos on a regular basis and has had a continual supply of eye drops while at the jail. (*Id.* ¶¶ 24-25.)

Tobias never met Superintendent Lyles, and communicated with Lyles only through the health service request forms and grievances he submitted and through the two detainee request forms he allegedly submitted while in Division 5. (*Id.* ¶ 26.) Sheriff Tom Dart had no involvement with Tobias' requests for medical attention other than Dart's supervisory role overseeing the Cook County Jail. (*Id.* ¶ 27.) The express policy of the jail is to provide medical care that meets or exceeds the standards of the American Medical Association to every inmate during his or her confinement and to conduct an initial screening to learn of each inmate's medical needs (*Id.* ¶¶ 28-30.)

Defendants have included affidavits from two ophthalmologists named Patriamakos. The first affidavit is from Dr. Dimitrios Patriamakos, who examined Tobias on August 4, 2011 and December 27, 2011. (R. 45, Exh. L.) The second affidavit is from Dr. Thomas Patriamakos (possibly Dimitrios' son), who reviewed Tobias' medical records. (*Id.* at Exh. M.) Both ophthalmologists state that Glaucoma is a slow progressing disease involving fluid build up in the eye; that Tobias' vision was within normal limits for both eyes at his August 4, 2010 visit; and that Tobias' condition would not have progressed to a medically significant degree between June 17, 2011 (when Tobias submitted a grievance stating a need for treatment of his Glaucoma) and July 20, 2011 (when he received eye drops). (R. 45, Exh. L at ¶ 7 and Exh. M at ¶ 6.) Dr. Thomas Patriamakos further states that the fluid pressure in Tobias' left eye would have taken several years to accumulate and could not be attributed to a two-month delay with receiving treatment and, further, that the condition could not have spread from the left to the right eye. (R. 45, Exh. M at ¶ 5.)

Tobias' affidavit, as well as his more recent filing, states that he was housed in Division 5 during the summer of 2011, that Superintendent Lyles was in charge of that

division, that Sheriff Dart was in charge of the jail, and that Tobias received inadequate medical attention during that time. (R. 50, 55.)

## DISCUSSION

Tobias names both Superintendent Lyles and Tom Dart as Defendants. Although Tobias does not state whether he seeks to hold them liable in their individual or official capacities, the summary judgment evidence demonstrates they are not liable in either capacity.

## Individual and Official Capacity

Individual liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Direct participation is not required, but the individual must have acquiesced in some demonstrable manner in the alleged constitutional violation. *Id.* With respect to a supervisor, he "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it]. In short, some casual connection or affirmative link between the action complained about and the official sued is necessary." *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

A claim against a § 1983 defendant in his official capacity is actually a claim against the governmental entity that employs him, which in this case is Cook County. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985). To prevail on a § 1983 claim against a municipality, a plaintiff must demonstrate that an alleged constitutional violation was caused by a policy, custom, or practice. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978). "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to

carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality." *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 675 (7th Cir. 2012).

Tobias acknowledges that he never communicated with Sheriff Dart and named him only "because he's the one that runs the Cook County Jail, and this is his facility." (R. 45-2, Pl. Depo. at 131.) Tobias' claims against Sheriff Dart are clearly only in his official capacity.

As to Superintendent Lyles, Tobias acknowledges that he neither met nor personally spoke to Lyles. However, Tobias contends that he communicated with Lyles in June 2011 through two detainee request forms about needing to see an eye doctor. (*Id.* at 123-27.) Also, Lyles was one of three persons who signed Tobias' June 17, 2011 grievance seeking eye drops for Glaucoma, (R. 45-6, Exh. F), and may have been aware of his other requests to see an eye doctor. Lyles thus appears to be sued in his individual capacity. He also appears, however, to be sued in his official capacity, given Tobias' contention that Lyles, as superintendent of Tobias' division, oversaw the needs of the inmates in the division and could have gotten Tobias to an eye doctor sooner. (R. 45-2, Pl. Depo. at 128.) The Court will thus consider the claims against Lyles to be in both his individual and official capacities.

## Deliberate Indifference to Serious Medical Need

A pretrial detainee is constitutionally entitled to adequate medical care, and jail officials violate this right when they act with deliberate indifference to the serious medical needs of a detainee. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (courts use the same standards for a deliberate indifference claim by a pretrial

detainee and one brought by a convicted person, even though the former is governed by the Fourteenth Amendment's Due Process Clause, while the latter is governed under the Eighth Amendment's prohibition against cruel and unusual punishment). To succeed on a deliberate indifference claim, a § 1983 plaintiff must demonstrate both: (1) that his medical condition was "objectively, sufficiently serious," and (2) that the defendant acted with a "sufficiently culpable state of mind." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 834). In addition to establishing a constitutional violation, a § 1983 plaintiff must also establish that the violation caused his injury or damages. *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

The Defendants do not dispute that Glaucoma is a serious medical condition, and courts have found that such a condition satisfies the first prong of a deliberate-indifference claim. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (a medical condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention") (internal quotation marks and citation omitted); *see also Byrd v. Shannon*, __ F.3d __, 2013 WL 1760848, *9 (3rd Cir. 2013); *Talley v. Dart*, No. 08 C 5485, 2012 WL 1899393, *3 (N.D. Ill. May 24, 2012) (Feinerman, J.) (both courts finding that Glaucoma is a serious medical condition for purposes of a deliberate indifference claim). This case thus turns on whether there is evidence that could establish the second prong of Tobias' deliberate indifference claim, as well as evidence that could establish that such a violation caused Tobias' injuries.

With respect to the claim against Superintendent Lyles in his individual capacity, Tobias must prove that Lyles actually knew of a serious risk to Tobias' health and consciously disregarded that risk. *Holloway*, 700 F.3d at 1073. This requires more than

negligence or gross negligence and necessitates a state of mind comparable to criminal recklessness. *Id.* As a non-medical officer, Lyles' role was to ensure that Tobias was receiving medical attention. *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005). Once an inmate is under the care of a physician, a non-medical officer "will generally be justified in believing that the prisoner is in capable hands," unless the officer has "'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Arnett*, 658 F.3d at 755 (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir.2008)).

Viewing the summary judgment evidence in a light most favorable to Tobias, there was no reason for Superintendent Lyles to know that Tobias had any eye condition requiring medical attention until June 14, 2011, when he filed a medical request slip requesting to see an eye doctor for eye drops and reading glasses. Not until his June 17, 2011 grievance did Tobias mention Glaucoma. In response to Tobias' June 14, 2011 medical request slip, an appointment with a general physician was made for June 28, 2011, and with an ophthalmologist for September 6, 2011. Although the ophthalmology exam was scheduled for two and one-half months later, Tobias' condition could have been addressed at the June 28, 2011 doctor visit where drops for Glaucoma might have been prescribed or, at the very least, where the doctor could have directed that Tobias see an eye doctor sooner.

It is unclear whether Tobias discussed his Glaucoma at the June 28, 2011 visit – when asked if he told any medical personnel about his condition at that visit, Tobias responded that he only discussed it with the receptionist. Regardless whether the condition was discussed, the fact that an appointment with a physician was made two weeks after Tobias complained of a need for eye drops and reading glasses indicates no

deliberate indifference by Lyles. *See Greeno*, 414 F.3d at 656 (no deliberate indifference existed where a non-medical prison official "investigated the complaints and referred them to the medical providers who could be expected to address [the inmate]'s concerns").

Following the June 28, 2011 doctor visit, when Tobias complained that he still needed treatment for Glaucoma, an appointment was made with an optometrist on July 20, 2011, where eye drops were provided. Tobias was then seen by an ophthalmologist on August 4, 2011, and continued to receive prescription eye drops.

The summary judgment evidence thus demonstrates that Tobias was scheduled to see a doctor shortly after he complained to officers of his need for treatment for Glaucoma and was scheduled to see an optometrist when he complained that he still needed treatment following the doctor's visit. Such evidence does not support a claim of deliberate indifference. *See Greeno*, 414 F.3d at 656.

At most, Lyles could be held responsible for two short delays (two weeks in June and three weeks in July) between the time Tobias requested medical attention and when he saw a physician. While deliberate indifference may exist for "delaying the treatment of a serious medical need," *Langston v. Peters*, 100 F.3d 1235, 1241 (7th Cir. 1996), "the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). The affidavits from the two ophthalmologists, which Tobias does not dispute, state that Glaucoma is "a chronic condition that is very slow to progress" and that it was "very unlikely that, even without treatment, Mr. Tobias' glaucoma would have progressed to any medically significant extent between June 17, 2011 . . . and July 20, 2011." (R. 45-12 and 13, Exhs. L and M, Affs. of Drs. Patriamakos.) Viewing the evidence in a light most

favorable to Tobias, he cannot establish that Lyles, in his individual capacity, acted with deliberate indifference.

The Court must come to a similar conclusion with respect to Tobias' claims of an unconstitutional policy or custom. The evidence shows that Tobias was asked about his medical conditions in an intake screening procedure, followed by an exam with a physician. Though it is disputed whether the intake screening form mistakenly indicated that Tobias answered no when asked if he had Glaucoma, there is no indication that the error was deliberate or done with a conscious disregard to Tobias' condition. Furthermore, Tobias could have discussed his Glaucoma with the physician who examined Tobias on the day of his entry, which he admits he did not do. The initial delay with Tobias not receiving treatment for his Glaucoma was thus due, at least in part, to him not making his condition known to doctors and not requesting medical attention for the condition until some time later. *See Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (deliberate indifference does not exist where an inmate's actions were the cause of delay in treatment).

When Tobias made known his need for treatment for Glaucoma in mid-June 2011, as noted above, appointments with physicians were made. The evidence shows, at most, only two occasions when he may have told jail officials of his need for treatment and his requests were ignored: (1) during his May 31, 2011 doctor visit and (2) during his discussion with a receptionist when seeing a physician on June 28, 2011. However, one or two occasions of not receiving treatment does not establish a policy or custom of deliberate indifference. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three.")

(quotation marks and citation omitted); *see also Palka v. City of Chicago*, 662 F.3d 428, 435 (7th Cir. 2011).

Furthermore, as noted above, the affidavits from the two ophthalmologists state that the two-month delay with Tobias receiving treatment did not cause his Glaucoma condition to progress to any medically significant degree and that the fluid build up seen on August 4, 2011 could not be attributed to the delay. Even if Tobias could establish a policy or custom of inadequate medical care at the jail, he cannot demonstrate that the delay caused by such a policy "exacerbated [his] injury or unnecessarily prolonged [his] pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Accordingly, the summary judgment evidence demonstrates that Tobias cannot succeed on a claim of an unconstitutional custom or policy with respect to the delay he experienced at the jail with receiving eye drops for Glaucoma.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment (R. 42) and enters judgment in their favor. Tobias' claims are dismissed. This case is closed. Tobias' "Motion of Filing" (R. 55) is granted to the extent the Court has accepted it and considered it as part of his response to the summary judgment; this motion is denied as to any other relief it seeks.

ENTERED: _Thomas M Durkin_

**Thomas M. Durkin**
**United States District Judge**

**DATE: June 11, 2013**